Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly Describe the property to be searched or identify the person by name and address)*<br>**Assigned call number (808) 217-6414 ("the Account" and "Target Telephone"), stored at premises controlled by VERIZON ("the Service Provider"), headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.** | Case No.   21-9137 MB |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of <u>Arizona.</u>
(identify the person or describe the property to be searched and give its location):

**As further described in Attachment A.**

The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

**As set forth in Attachment B.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

YOU ARE COMMANDED to execute this warrant on or before    6/29/2021
*(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m.
☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge.

_____
     *(name)*
☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*    ☐ for  days *(not to exceed 30)*
☐ until, the facts justifying, the later specific date of _____

Date and time issued:    6/15/2021@7:30pm             *Eileen S. Willett*
                                                                              *Judge's signature*

City and State: <u>Phoenix, Arizona</u>              <u>Honorable Eileen S. Willett, U.S. Magistrate Judge</u>
                                                                       *Printed name and title*

## ATTACHMENT A

### Particular Items to be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (808) 217-6414 ("the Account" and "Target Telephone"), stored at premises controlled by VERIZON ("the Service Provider"), headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

## ATTACHMENT B

### Particular Items to be Seized

To the extent that the information described in Attachment A is within the possession, custody, or control of **VERIZON**, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to **VERIZON** or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), **VERIZON** is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      All voice mail, text, and multimedia messages from June 1, 2021, to present, stored and presently contained in, or on behalf of the account or identifier;

b.      All existing printouts from original storage of all of the text messages described above;

c.      All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from June 1, 2021, to present;

d.      All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message from June 1, 2021, to present;

e.      All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the

wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

      f.      Detailed billing records, showing all billable calls including outgoing digits, from June 1, 2021, to present;

      g.      All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from June 1, 2021, to present;

      h.      Incoming and outgoing telephone numbers, from June 1, 2021, to present;

      i.      All records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

      j.      All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

      k.      All records pertaining to communications between **VERIZON** and any person regarding the account or identifier, including contacts with support services and records of actions taken;

      l.      The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s); and

      m.      The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to violations of Title 18, United States Code, Section 1111 (Murder) including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

The Provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

FAX or Internet

# UNITED STATES DISTRICT COURT

for the
District of Arizona

In the Matter of the Search of:

Assigned call number (808) 217-6414 ("the
Account" and "Target Telephone"), stored at
premises controlled by VERIZON ("the Service
Provider"), headquartered at 180 Washington
Valley Road, Bedminster, NJ 07921.

)
)
)
)

Case No.    21-9137 MB

## ELECTRONIC APPLICATION FOR SEARCH AND SEIZURE WARRANT

I, F.B.I. Special Agent Jenifer J. Mulhollen, a federal law enforcement officer for the government,
request an electronic search warrant and state under penalty of perjury that I have reason to believe that on the
following person or property *(identify the person or describe the property to be searched and give its
location)*:

**See Attachment A.**

located in the District of Arizona, there is now concealed *(identify the person or describe the property to be seized)*:

**See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

[X] evidence of a crime;

[X] contraband, fruits of crime, or other items illegally possessed;

[X] property designed for use, intended for use, or used in committing a crime;

[ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C.  1153 and 1111 | Murder |

The application is based upon the following facts:

[X] Continued on the attached sheet (see attached **Affidavit**).

[ ] Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Christina Covault  *CWC*

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty
of perjury that the foregoing is true and correct.

_____
*Applicant's Signature*

Executed on: _____

Jenifer J. Mulhollen, F.B.I. Special Agent
*Printed Name and Title*

**Sworn by Telephone**

Date:  6/15/2021
_____

Time:  7:30pm
_____

*Judge's Signature*

City and State:  Phoenix, AZ
_____

Eileen S. Willett, United States Magistrate Judge
*Printed Name and Title*

## **ATTACHMENT A**

### **Particular Items to be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number (808) 217-6414 ("the Account" and "Target Telephone"), stored at premises controlled by VERIZON ("the Service Provider"), headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

## ATTACHMENT B

### Particular Items to be Seized

To the extent that the information described in Attachment A is within the possession, custody, or control of **VERIZON**, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to **VERIZON** or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), **VERIZON** is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      All voice mail, text, and multimedia messages from June 1, 2021, to present, stored and presently contained in, or on behalf of the account or identifier;

b.      All existing printouts from original storage of all of the text messages described above;

c.      All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from June 1, 2021, to present;

d.      All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message from June 1, 2021, to present;

e.      All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the

wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

f.      Detailed billing records, showing all billable calls including outgoing digits, from June 1, 2021, to present;

g.      All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from June 1, 2021, to present;

h.      Incoming and outgoing telephone numbers, from June 1, 2021, to present;

i.      All records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

j.      All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

k.      All records pertaining to communications between **VERIZON** and any person regarding the account or identifier, including contacts with support services and records of actions taken;

l.      The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s); and

m.      The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to violations of Title 18, United States Code, Section 1111 (Murder) including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

The Provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Jenifer J. Mulhollen (Affiant), a Special Agent of the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows.

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search and seizure warrant for information associated with a cellular telephone assigned call number (808)-217-6414 ("Target Telephone"), which is stored at premises owned, maintained, controlled, or operated by VERIZON ("the Service Provider"), a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921. The information to be searched is described in the following paragraphs and in Attachment A, and the information to be seized is described in Attachment B.  This affidavit is made in support of the application under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require VERIZON to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2.      Your affiant, Jenifer J. Mulhollen, is a Special Agent (SA) of the Federal Bureau of Investigations (FBI), and is currently assigned to the Flagstaff, Arizona Resident Agency of the FBI.  I have been employed with the FBI since February 2013. I have been assigned to investigate violent crime on the Navajo Nation Indian Reservation

in Arizona. I have received training from the FBI regarding the investigation of violent crime and crimes involving the use of electronic communications.

3.    The information contained in this affidavit is based upon my personal knowledge, training, experience, my consultation with other experienced law enforcement officers, and the investigation by other law enforcement officers.  I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts necessary to establish probable cause to support issuance of the requested search warrant.

## JURISDICTION

4.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

5.    Based on the facts below, there is probable cause to believe that on June 11, 2021, at approximately 8:30 A.M., an individual identified as Sv.W., an enrolled member of Navajo Nation, was found deceased and appeared to have suffered head trauma while within the confines of the Navajo Reservation.

6.    On June 11, 2021, at approximately 10:00 AM (Flagstaff Local Time) your Affiant received an email notification from the FBI Phoenix Ops Center informing that

2

Navajo Nation Criminal Investigator Phylisia Todecheene requested assistance regarding a possible homicide in Tuba City, Arizona. Your Affiant spoke with CI Todecheene, who stated that a male was found deceased and appeared to have suffered head trauma. Your Affiant arrived on scene, an open field 4.5 miles west of mile post 480 off Arizona State Highway 89A in Cameron, Arizona, at approximately 11:40 A.M (Flagstaff Local Time). When your Affiant arrived on scene, the deceased male had been removed and transported to the Coconino County Office of the Medical Examiner. Your Affiant processed the scene and collected shoe impressions and vehicle tire impressions.

7.      On June 11, 2021, the deceased male, Sv.W., was positively identified by SA Jordan Filippi utilizing a mobile biometrics application.

8.      On June 14, 2021, your Affiant and CI Todecheene interviewed Sv.W.'s mother, K.N. K.N. was accompanied by her daughter, Sp.W. Sv.W. was born as a male but identified as a female and went by the name C____. Sv.W. was sexually active with male partners, but K.N. did not know their identities.

9.      K.N. provided Sv.W.'s cell phone number as 808-217-6414. Sv.W. had a black iPhone. Sv.W. had his own cellular account and did not share a cellular plan with anyone. Sv.W. typically communicated with family members by text messages or phone calls. Sv.W. always had his cell phone and would never leave it behind.

10.     Sv.W. lived with his sister Sp.W. at her residence in Gap, Arizona. K.N. had recently returned from Hawaii where she was working and living. K.N. was also

living with Sp.W.  This past Tuesday (June 8) and Wednesday (June 9) evenings, Sv.W. left the residence in Gap and returned home.  On Thursday, June 10, 2021, Sv.W. left the residence in Gap and told K.N. he was "just going up the road" and would return.  At approximately 11:00 P.M., Sv.W. returned to the residence in Gap to retrieve his bag. K.N. heard what sounded like a loud truck outside.  Sv.W. told K.N., "I'm going to Red Lake."

11.    K.N. later learned from her granddaughter, Kr.G., that Kr.G. spoke with and provided a ride to Sv.W. around 3:00 A.M. on Friday, June 11, 2021. Kr.G. told K.N. that Sv.W. had contacted her from his cell phone and informed he was "stranded in Red Lake." Utilizing his phone, Sv.W. shared his location with Kr.G., and this is how Kr.G. found Sv.W.. Kr.G. was accompanied by her boyfriend, I.B., and her child, Kl.G., when she picked up Sv.W..  Kr.G. was going to head back to her residence in Cow Springs, Arizona, when Sv.W. stated he wanted to meet a friend at the store in Red Lake and that his friend was coming from Tuba City to pick him up.  Kr.G. dropped Sv.W. off at the store in Red Lake.  The friend arrived driving a blue GMC pick-up truck.  The truck was lifted, had tinted windows, big tires, and an LED light bar mounted on top of the windshield.  Sv.W. got into the pick-up truck, and the truck drove off.

12.    On June 14, 2021, your Affiant and CI Todecheene drove to the store in Red Lake, Arizona.  Your Affiant spoke to the on-duty manager, who stated that the store did not have surveillance cameras covering the outside parking lot or gas station.

4

13.     On June 14, 2021, SA Filippi served a preservation letter to VERIZON for cellular number (808) 217-6414.

14.     At the time of this writing, your Affiant has not yet made contact with Kr.G. or I.B. for possible interviews.  CI Todecheene recently made contact with Kr.G. and obtained additional information about the vehicle Sv.W. entered at the store in Red Lake.   Your Affiant will continue to make efforts to complete additional witness interviews.

15.     On June 14, 2021, an autopsy was performed on Sv.W. The full report is not yet ready, but your Affiant spoke to Jessie Hartman, an investigator with the Coconino County Office of the Medical Examiner, who stated the cause of death is blunt force trauma, and the manner of death is homicide.

16.     Based on my experience having investigated homicides on the Navajo Nation, subjects and their victims often have cellular communications, and there is a possibility of finding evidence on cellular phones, which may assist in identifying the subject.

## PROVIDER'S STORED ELECTRONIC COMMUNICATIONS

17.     In my training and experience, I have learned that VERIZON is a company that provides cellular telephone access to the general public, and that stored electronic

communications, including retrieved and unretrieved voicemail, text, and multimedia messages for VERIZON subscribers may be located on the computers of VERIZON. Further, I am aware that computers located at VERIZON contain information and other stored electronic communications belonging to unrelated third parties.

18.    Wireless phone providers often provide their subscribers with voicemail services.  In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail.  If the subscriber does not delete the message, the message may remain in the system of VERIZON for weeks or months.

19.    Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers.  This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by VERIZON for short periods incident to and following their transmission.  In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

20.    Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems.

6

This information can include log files and messaging logs showing all activity on the account, such as local and long-distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

21. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

7

22.    Many wireless providers retain information about the location in which a particular communication was transmitted or received.  This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

23.    Wireless providers also maintain business records and subscriber information for particular accounts.  This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers.  In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed).  The providers may also have payment information for the account, including the dates, times and sometimes, places, of payments and the means and source of payment (including any credit card or bank account number).

24.    In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Wireless providers typically retain records

8

about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

25.     As explained below, information stored at the wireless provider, including that described above, may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.   In my training and experience, the data pertaining to a particular cellular device that is retained by a wireless provider can indicate who has used or controlled the cellular device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, data collected at the time of account sign-up, information relating to account payments, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled a cellular device at a relevant time.  Further, such stored electronic data can show how and when the cellular device and associated cellular service were accessed or used.  Such "timeline" information allows investigators to understand the chronological context of cellular device usage, account access, and events relating to the crime under investigation.  This "timeline" information may tend to either inculpate or exculpate the cellular device owner.  Additionally, information stored by the wireless provider may indicate the geographic location of the cellular device and user at a particular time (e.g., historic cell-site location information; location integrated into an

9

image or video sent via text message to include both metadata and the physical location displayed in an image or video). Last, stored electronic data may provide relevant insight into the state of mind of the cellular device's owner and/or user as it relates to the offense under investigation. For example, information relating to the cellular device in the possession of the wireless provider may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

26.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require VERIZON to disclose to the government copies of the records and other information (including the content of communications) particularly described in Attachment B. Upon receipt of the information described in Attachment B, government-authorized persons will review that information to locate the items described in Attachment B.

## CONCLUSION

28.     Based upon your affiant's training, experience, and observations your affiant submits that there is probable cause to believe that in the Account and Target Telephone, listed in Attachment A, there exists information and data constituting evidence, fruits or instrumentalities of violations of 18 U.S.C. § 1111, Murder.

10

29.    Based on the forgoing information, I request that the Court issue the proposed search and seizure warrant authorizing examination of the Account and Target Telephone described in Attachment A and the items described in Attachment B.

Respectfully Submitted,

_____
Special Agent Jenifer Mulhollen
Federal Bureau of Investigation

Telephonically subscribed and sworn to before me on ___June 15___, 2021.
        @7:30pm

_____
THE HONORABLE EILEEN S. WILLETT
UNITED STATES MAGISTRATE JUDGE